Alright, so now we'll turn to the regular argument calendar, beginning with Exxon Mobil v. Healy & James. Mr. Anderson, you've reserved three minutes for rebuttal, I think, right? I have, Judge. Okay, you may proceed. Thank you. Your Honors, this case should not have been dismissed. It raises an important challenge to the State's pretextual use of burdensome, multi-year investigations to silence, deter, and discriminate against dissenting viewpoints. Why is it not moot? You already had a big win in New York, at least, and so have you asked for these documents back? Is this all about getting the documents back? At this point, there are multiple forms of relief that could provide a remedy for the injuries that Exxon Mobil has suffered over the four years. But you haven't asked for the documents back, right? We brought this lawsuit to obtain that relief, Judge, and we do request It's not in the complaint, right? three years ago, the case had proceeded to a certain level. There had been an investigation. Have you ever asked New York State for the documents back? Your Honor, we've made that request to this Court through — we have not directly asked the New York Attorney General to return the documents, but the New York Attorney General knows we want the documents back. We've alerted this Court months ago that it could still provide a remedy to us in the form of the return of documents. Why would that — your First Amendment claim would still be moot, though. That's a Fourth Amendment issue, whether or not you're entitled to the documents back. But your primary claim here, I think, is a First Amendment claim. Why isn't your First Amendment claim against New York moot? The documents are integral to the First Amendment claim. At the La Jolla conference, what the activists argued is that a sympathetic State Attorney General could obtain documents from companies like Exxon — No, but your First Amendment claim is they're restricting our vote point, right? That's right. So it has nothing to do with the return of documents. You want — you wanted, at the time you filed this law, to stop the investigation and join the investigation because they're restricting your client's First Amendment rights, right? That's — that's over. It's — it's — That issue's over. The issue's not over. The documents are used to burden the company and to exert pressure on the company to change the company's viewpoint. Justice Ostreger recognized that at trial and in his decision, that the coercive sensitive information revealed in a courtroom turned over to State AGs. What case do you have anywhere in the United States where a court has said that the relief you could seek for a First Amendment violation is a return of documents? All the cases you cite, the Scientology case and all the other cases, are Fourth Amendment cases. There's no case that says to vindicate your First Amendment rights, you can seek a return of documents from the government. We don't have authority on that specific point, Judge. But in this case, the facts are different from those that we've cited to the court that have come up before. Here, the documents are used as part of the effort to silence the viewpoint that's disfavored. This is literally the strategy that — You say are used. I think what you mean is they will be used, they may be used. If they follow through on their threats, then maybe those documents will be used. But what do you mean they are used? The mere fact that the State Attorney General has probed ExxonMobil and obtained documents containing sensitive information, which all the parties recognize are sensitive — we've entered a protective order in the case that they can't just be released — exerts pressure on the company to be mindful of its speech out of fear that the documents will be used against the company. That was the purpose that was outlined at the La Jolla conference by Matt Powa, Naomi Oreskes, and others who then subsequently met with the attorneys general, that the goal is to obtain documents to put pressure on the company. But setting aside the return of documents, which we submit is a recognized form of relief that would defeat the claim of mootness and provide a remedy to the First Amendment claim that's asserted here, there's also an appropriate remedy that would come in the form of remedial measures, such as those that the Ninth Circuit approved in White, where there was an investigation that was brought against people who were protesting the conversion of subsidized housing into a development. HUD launched an investigation of those protesters based on that viewpoint, based on that speech. And the Ninth Circuit there found that when HUD took on remedial measures, instituted a policy prohibiting investigations that are launched to suppress speech, that discriminate based on the viewpoint that's taken, the Ninth Circuit said there was no further need for relief from the Court because the remedial measures had been taken. So even if return of documents was not a sufficient form of remedy, there still remains a remedy that could be taken in the form of reforming the office of the attorneys general. And only the New York attorney general has argued that the case is moot, but there is there would be appropriate relief in the form of those measures that could be taken in line with what was authorized in HUD. Mootness only speaks to the New York attorney general, but both of the both State attorneys generals participated in a press conference where they echoed the very arguments that the activists had urged previously. Now, these activists had defined what they called an Exxon campaign, the goal of which was to delegitimize ExxonMobil as a political actor and drive politicians away from consulting with ExxonMobil, to drive their voice from the public square. The way they were to do that, as recorded in documents, was to recruit a sympathetic State attorney general who might have some success in obtaining documents from ExxonMobil. At the ---- Roberts. Let me ask you, I know that you fault the district court for characterizing this as a retaliation claim, which you obviously say it is not. It's a viewpoint discrimination claim. But every single case, including White, under the viewpoint discrimination analysis has pointed to an ongoing restriction that a municipality has put on the plaintiff, restricting the forum or the speech, you know, commercial speech, some type of speech. Whereas here, there is no restriction like that that you're pointing to. So can you address that, why this is you're characterizing it as a viewpoint discrimination case, but isn't it really a retaliation claim? Your Honor, we believe this is ---- Because under Hartman, if it was a retaliation claim, you'd have to show no cause, and you're trying to argue for the investigation, and you're trying to argue that that's not the standard for viewpoint discrimination, right? That's not even the standard for a retaliation case in the employment context, for example. The standard that ---- No cause, right? For a retaliatory arrest. So the retaliatory investigation is going to be do we have a different standard for retaliatory investigation? In the civil context, yes. The Supreme Court has never extended that probable cause requirement from retaliatory prosecutions and retaliatory arrests. And they were very cautious about extending it from retaliatory prosecutions to retaliatory arrests, and even most recently in Neves. rule for if there's a presumption of regularity that attaches to an arrest, why wouldn't that same presumption attach to an investigation, which you need less level of proof to start than you would in an arrest? So we'd have you plead and prove no cause for an arrest, but you don't have to plead that for simply the initiation of an investigation. It doesn't make a lot of sense, right? The Supreme Court explained why in Neves. In an arrest, there is a split-second decision often that an officer has to make when deciding whether to arrest someone. And the speech of that person could very well influence the decision whether to conduct that arrest. Here, unlike in Neves, this subpoena that was issued was the product of a longstanding conspiracy between the state attorneys general and activists who wanted state power to be used against companies like ExxonMobil for dissenting on climate risk. What would prevent every corporation that is placed under investigation by an attorney general for some type of alleged fraudulent statement to the investing public, prevent them from immediately turning around and filing this type of lawsuit against the AG? If it involves an alleged fraudulent statement to the public, they can immediately turn around and say, we believe that this is trying to limit our speech of what we're saying about our product, what we're saying about our company, what we're saying about some public issue, what would be the difference? Well, Your Honor, there clearly has to be line drawing. Absolutely. It cannot be that the prosecutors have absolute immunity to claims of viewpoint discrimination. It can't be that state AGs can launch civil investigations against political opponents with impunity and subject to no judicial review. And conversely, it cannot be that every time they launch an investigation, they get hauled into court. And that is why it is so significant that a dozen States, including 10 State attorneys generals and two governors, have come in and said, this is the case that should proceed. No State wants to be hauled into court to answer as to why it launched an investigation. But those attorneys generals said, yes, there must be line drawing, and this case is far beyond that line. And we are, Judge. We have contemporaneous documents that show not only the origins of the conspiracy, but also the way that the conspiracy was carried out. We have subpoenas that ask questions about why ExxonMobil believes, and I quote, that global poverty is more important than climate change. Or why does Exxon say that climate change is an engineering problem with an engineering solution? Those are not questions about our products. Those are questions about policy. They would appear on the Wall Street Journal, and they would be completely normal to appear there. That is the — what is the First Amendment protects is that type of speech, and that's the speech that's being targeted here. Other corporations would be hard-pressed to come into court with this documentary record in the absence of discovery. And I'd like to emphasize that point. We've had no discovery. And we've been able to amass this documentary record showing the viewpoint discrimination. If we could not make out a claim for viewpoint discrimination on the facts or in the based on the viewpoint that they've expressed. I wanted to get to race judicata with respect to Massachusetts, but I wasn't sure if Judge Kears had a question that we overran. Okay. So let's get to that, to the race judicata point. I assume you wanted to get there. I mean, why — I mean, you could have made this point previously in Massachusetts, but you didn't, right? We couldn't. We were brought in — we came into Massachusetts to preserve our rights. We filed a motion to quash the CID, because if you didn't file it, you would waive rights with respect to the CID. That brought on a summary proceeding where the validity of the CID was tested under the highly deferential standard applicable in Massachusetts. I point the Court to Charlotte. In Charlotte, the Massachusetts Supreme Judicial Court determined that a petition for receivership that raised similar claims that were then subsequently resolved in a civil action did not constitute claim preclusion, did not constitute res judicata in that subsequent civil action, because, and I'm quoting, the petition for receivership did not determine or confer liability. And that is exactly what cannot be done on a motion to quash in Massachusetts State court. It does not determine liability. It does not confer liability. You cannot bring substantive claims in front of that judge and say, I would like an injunction, I would like declaratory relief. That is not what that proceeding is for. That proceeding is for the limited, narrow purpose of testing the validity of the civil investigative demand under Massachusetts law. So res judicata, Judge Sullivan, does not apply here because we could not have brought our causes of action in front of Justice Breger in that summary proceeding. I mean, you raised State constitutional claims or arguments, right? We did raise arguments. But not Federal ones. We did not. But that's not the distinction that we're pressing here, Judge. We raised arguments in support of quashing the CID that certainly overlap with the arguments we're pressing here. The Supreme Court's case is about claims, not arguments. And if we could not bring our cause of actions, if we could not bring a cause of action in 1983 for a civil rights violation under 1983 or an analogous State law provision, then we could not obtain remedy from Justice Breger, and that proceeding cannot preclude this civil action. It's the remedy would have been the same. I mean, it would have been the same in either case, right? The remedy would have been to quash the subpoena and stop the investigation, right? No. All we could seek there was a quashing of the CID, modification of the CID, a protective order of some sort, relief related to the CID. There's limited relief that could have been granted. She couldn't have been granted. A declaration that the investigation was unconstitutional in some way, right? There's no indication that declaratory relief was available. And it's not Exxon's burden to show that it was. The Massachusetts Attorney General has come in and said, res judicata applies. They bear the burden of showing this Court the relief that we seek here was available from Justice Breger. I think you did raise Federal constitutional claims as well as the State ones, didn't you? And, in fact, I think you argued to the Massachusetts Court that they should stay, that it should be stayed because it could lead to an inconsistent ruling, right? Didn't you raise Federal constitutional claims with the State ones? Absolutely. I was acknowledging that with Judge Sullivan. We did raise arguments that supported a motion to quash that overlap here. Certainly, we raised the free speech point. But claim preclusion, res judicata, is not about arguments. It's about claims. And it's about causes of action. And we could not bring these claims, these causes of action in front of Justice Breger on a summary proceeding on a motion to quash. Another Massachusetts State court or case that I direct the Court's attention to is called Bernier. There, in divorce proceedings, one of the spouses had requested a certain form of relief from the judge. The judge never ruled on that form of relief. In a subsequent civil proceeding, the other spouse said, no, res judicata, you raised that in the divorce proceedings, you can't raise it again here. The Massachusetts Court said, no, res judicata does not apply, because when a judge doesn't reach those questions, then there's no ruling for the purposes of res judicata. And that is consistent with what the Supreme Judicial Court said in Kerker. When there's any ambiguity about what is resolved by the trial court, or if the trial court carves something out, then for that issue, there can be no res judicata. And here, Justice Breger did carve out First Amendment. In a footnote, she wrote clearly that the Court does not address ExxonMobil's First Amendment claims or free that decision for an entirely independent reason from the fact that we couldn't raise the claim in the first place. But because Justice Breger carved it out, even if we could have raised that cause of action in front of her, because she carved it out, that decision cannot preclude us from raising it here or in another forum. All right. You've reserved some time. We'll now hear from appellants. Thank you, Judge. Thank you, Your Honors. Anisha Desgupta for New York Attorney General Letitia James. How are you splitting up the time between the two of you? Half and half, Your Honor. Very well. Thanks. Multiple events occurring while this appeal was pending have rendered the case moot as to the New York Attorney General, and this Court should therefore dismiss the appeal as to the New York Attorney General. I want to start off with this documents issue, because that's an important part of why the case is moot. Shortly after New York brought the state court action against Exxon, the parties stipulated to a process for return and destruction of the nonpublic documents that Exxon provided during the investigation and the lawsuit. And the reason why those documents have not yet been returned to Exxon is that we have a litigation to hold on us relating to this very case. And we provided a copy of that stipulation as an attachment to our motion to dismiss, so Your Honors have it. So not only has the investigative subpoena that is the object of their operative complaint been withdrawn and the investigation ended and the parties stipulated to a process for return of the documents, but in the state court suit, Exxon raised and litigated the very same First Amendment and misconduct claims that it is bringing in this lawsuit. And it framed them as First Amendment and due process claims. And it also had some discovery. It had civil discovery in that state court lawsuit that gave it some of the New York Attorney General Office's communications with third parties that were relevant to the complaint. And the state court judge in that suit looked at what Exxon presented on these claims of misconduct and said that there was no evidence of any impropriety by any state official. In addition to mootness, you're arguing collateral estoppel or race judicata? Race judicata, right, the very same events that have rendered this moot. So we have a trial and a final judgment in that case is over. So the entire controversy has been resolved. And these same events prevent Exxon from raising any further challenge to the subpoenas and to the investigation. So there's nothing left here at all. The state court judge didn't decide the First Amendment issue, right? There was no decision about whether or not the First Amendment was violated. It was raised as an affirmative defense by Exxon. There was no decision on that though, right? The state court judge dismissed that defense because the Defense. That's right, because the state court judge concluded it was meritless. Let me ask you a question about, I understand the mootness issue, but on the merits, would you concede that if an investigation was in bad faith and was being used to alter the company's position on climate change, that a First Amendment claim would exist? If it was initiated in bad faith in order to alter the company's position on climate change, wouldn't that be a First Amendment claim? If under your honors hypothetical, there was no cause for the investigation, then that's what the legal framework contemplates. The legal framework contemplates that you have to show improper motive, which they haven't done. We can get to that, that the statements they quoted don't show any improper motive whatsoever. They allege bad faith in several paragraphs, including, this is a First Amendment complaint, paragraph 107, the subpoena and the CID were issued without having a good faith basis for conducting an investigation and with the ulterior motive of preventing ExxonMobil from exercising rights. So they allege this bad faith and then they allege that the purpose of it was to alter their position on climate change. I don't have to go through all the allegations with you. They have multiple paragraphs that deal with the press conference, the meetings before the press conference to try to demonstrate plausibly that that was the purpose of the investigation, not fraud. The purpose of the investigation was to get them to agree with the Attorney General's position on climate change. So why wouldn't that be enough for a motion to dismiss? What else could they have alleged other than what they alleged? The question of whether a particular statement contemplates or bad faith can be inferred from that is a legal question. And the allegation of bad faith isn't credited. What's credited on a motion to dismiss is the substance, the factual allegations they make. And what they've alleged are certain statements made by former Attorney General Eric Schneiderman, in which he said he had opened an investigation because he had heard about potential wrongdoing. He wanted to get documents to see whether that wrongdoing was occurring, and he was not prejudging the investigation. The questions in the requests seem to have nothing to do with fraud. They seem to be pure policy questions. Those were some of the ones that Mr. Anderson just referenced. I mean, so it would seem to me that would support an inference that this is really not about fraud on investors. This is about trying to just chill certain speech on the part of the oil companies. But if Your Honor is referring to the subpoena requests, they were asking for documents about Exxon's research and how Exxon was using that research in its different projections and accounting. Would the Attorney General, if he was concerned about fraud, be talking about gridlock in Washington, needing to alter the debate, clear up the confusion in the public about climate change? There are many statements in the press conference that are completely unrelated to fraud on investors or consumer fraud. They're part of a broader agenda to try to get legislation, as they cited from one of the groups at a meeting, to talk about pressuring the companies to go along with the clean air agenda. So why isn't that enough for a motion to dismiss? That's the question. The district court said that it was hyperbole, but those are usually not the types of determinations that we make on a motion to dismiss. What was hyperbole? There was another part of the district court opinion that said this is what politicians say. Those aren't usually the types of determinations that we make at this stage, right? Well, I think we have to look at the content of the statements. And the purpose of the press conference wasn't exclusively to announce the investigation. The investigation was mentioned during the press conference. It had already been going on for a year before the press conference took place. And the statements made in connection with the press conference, and these are attached to Exxon's complaint at JA 483, 45, they just repeatedly refer to no prejudgment. The attorneys general investigate fraud all the time in numerous industries. They cooperate. The statements show that there was no prejudgment and that Exxon wasn't being treated differently from anybody else. And the presumption of regularity in law enforcement conduct does apply here. Contrary to what my friend on the other side has said, all of the same considerations that the Supreme Court has focused on in this case do apply here. We, the defendants cite a case in their briefs to this Court, Macbeth v. Himes, from the Tenth Circuit where the Tenth Circuit has applied the same kind of framework to a civil investigation by a child protective agency. And contrary to my friend's assertion, Nieves wasn't about split-second decision-making. Hartman was a prosecutorial decision case where that wasn't a matter of split- second decision-making. What matters is that prosecutors — Those were summary judgment cases, though, right? They weren't a pleading issue. That was whether or not there was proof to support the no cause, right? That's right. But when you're trying to decide if someone has adequately alleged something, then what this Court has to conclude under that framework is whether the person has adequately alleged a lack of proper basis for an investigation. Because what the Supreme Court has said is that law enforcement officials are charged with enforcing the law to protect the public. So to allow somebody to make an allegation about a particular view of a law enforcement official and use that to sandbag an investigation, to drag that law enforcement official into court when that person can't show or allege the lack of a proper basis would be contrary to the public interest. And that applies for state attorneys general as well as federal officials. And in the civil enforcement context as well as the criminal context. If the Court has no further questions, we ask the Court to dismiss the appeal as to the New York attorney general as moot. Thank you. Thank you very much. Mr. Schofield? Am I pronouncing that right? Schofield? Yes. Yes, Your Honor. Good morning, Your Honor. Seth Schofield on behalf of the Massachusetts attorney general. And may it please the Court. I'd like to start with Judge Bianco's question earlier to Mr. Anderson. What would prevent another company from doing something like Exxon is doing here in the state investigative context? And the answer is nothing. And that's the real danger that this case presents, the strategy that Exxon has utilized in this case. Exxon's strategy, if accepted, would allow the subject of any state investigation to delay and attack and deter a state fraud investigation simply by characterizing the investigation as targeting ideas. But there are some unique aspects to their allegations. This is a press conference, again, that also the Massachusetts attorney general had similar quotes that go well beyond fraud on investors or some type of consumer fraud. They talk about a climate change agenda, about the need for legislation. Attorney General Healy said part of the problem has been one of public perception as to why there hasn't been more legislation with respect to climate change. So this is not sort of the standard AG case where they bring some type of fraud allegation against a company. There's a lot more alleged here than that, right? Well, Your Honor, to begin, that press conference wasn't about Exxon. That press conference was about a number, a variety of different issues related to climate change. Exxon was just a very small part of that, which Exxon is now seizing upon to claim that the investigation, the civil investigative demand served upon Exxon by the Massachusetts attorney general was based on an improper purpose. But if you read closely what the attorney general said in regard to Exxon, which was, in fact, very, very little, all they show is that the attorney general had a belief that Exxon may have committed fraud. And that's a determination that the Massachusetts attorney general has to have under state law to issue an investigative subpoena. Let me ask you a question about Judge Sullivan. Why would, in a CID, would you ask a company for documentation that would support their claim that poverty is a bigger issue than climate change? How does that relate to, say, type of investment fraud or consumer fraud? Isn't that really, again, just trying to go at some of the speech of the company that Massachusetts disagreed with? No, Your Honor. Absolutely not. What would be the basis for asking them for all communications related to a particular statement like that, poverty is a bigger issue than climate change? Well, Your Honor, first of all, the civil investigative demand had about 25 requests in it. Right. They're seizing on a very small subpart. But what's the justification for that one? The justification is that the investigation was about what Exxon knew, when it knew it, and what it was telling the public. How does poverty versus climate change inform that? That would be an actionable false statement? If Exxon knew internally or held a different perspective internally than it shared externally, then absolutely, under Omnicare, an opinion can be also the basis for a fraud, not just an investigation, but also for liability for fraudulent statements. So that's absolutely clear from Omnicare. And also, Your Honors, Exxon had every right to challenge, if that was the request for documents that it took issue with, it had every right in the state court proceeding to ask the superior court judge to quash that request, which is what ordinarily happens in a motion to quash proceeding. Parties don't typically come in and move to quash an entire investigative subpoena. They instead, especially on First Amendment grounds, and that's what Exxon's doing here, I think a good example of that is the court's decision in In Re or FEC versus LaRoche, where that was an investigation into fraud and campaign contributions solicitations. And the party there, LaRoche, argued that the certain requests in that subpoena violated the First Amendment rights of individuals that were subject or would have been exposed through that. So that is an example of what Exxon could have done but chose not to do. And again, Your Honor, I think going to this segue, a good segue into claim preclusion, which absolutely bars Exxon's claims here. Do you want to hit something before that? No. That's what I was going to ask you. What they're saying essentially that the relief that they're seeking in this case could not have been sought, either declaratory relief or the scope of the injunctive relief could not have been obtained in that procedural posture. So what's your response to that? That seems to me to be the key issue. That's wrong, Your Honor. First of all, if you just compare the request for relief in the original complaint before New York was amended to add New York, which is at pages 84 through 85 of the Joint Appendix, or if you look at the First Amendment complaint, the operative complaint before the Court right now, the only relief that Exxon sought in its request for relief was in order in joining the enforcement of the civil investigative demand. Now, in its — it later filed a motion to amend its complaint to broaden the scope of the request to relief — for relief to the entire investigation. But even that was not materially — which isn't really before the Court, but even that is not materially different from the relief they requested in the State Superior Court action, where they asked at — and I'll give you the JA site for that is at 1046 is the request for relief in the State court petition. Exxon asked not just to quash the subpoena, but Exxon asked for an order in joining the entire — or an order recusing the entire office of the Massachusetts Attorney General from the investigation. As Judge Caproni held in the district court, that request was not materially different from a request seeking an injunction of the investigation itself. Now, there are no other exceptions that would apply to — But what about declaratory relief? Could they seek any declaratory relief in connection with that proceeding? We believe so, Your Honor. We believe that that was — they could have sought broader relief. And I'll give you another example of why Exxon itself, I don't believe, even believes that that's a limited proceeding. Just recently, Exxon filed — last — in the late fall, Exxon filed a motion in the or preventing the Attorney General from filing a complaint. So not even Exxon views the civil investigative demand proceeding as being limited. It views it as an opportunity. The Superior Court is a court of general jurisdiction, and it has empowered to issue any and all relief that Exxon might have been entitled to. Now, Exxon did seek all of the relief that it sought before the district court here. It also — and all of that relief was based on the same transaction, which is the standard under Massachusetts law, the same nucleus of operative facts. And for that reason, Your Honors, ordinary principles of claim preclusion should bar and do bar Exxon's claims here. I see that my time has expired.  Thank you, Your Honors. I'll now hear from Mr. Anderson for three minutes. Thank you, Judge. I'd like to respond to the question about claim preclusion. The Massachusetts Attorney General has not come forward, again, with any precedent that would establish that we could have brought claims for affirmative relief in front of Justice Breger in the limited-purpose proceedings to quash the CID. They were brought in by motion. They were resolved within a two-hour hearing. I guess the issue is, you know, claims versus relief. If the relief you're seeking through your claims are identical to the relief you could have sought in the proceeding, is that enough? It's not enough under the law, and it's also not enough based on the facts in front of the court. We did not seek the full relief that we'd be entitled from a district court or a State court of Massachusetts if the claim had been brought in a proceeding where declaratory relief and an injunction would have been issued. Okay. So what's the different – what different relief would you have obtained if you were affirmatively asserting claims? A declaration that the investigation violated ExxonMobil's First Amendment rights under the Constitution. We also asked for other relief in – to the extent that – Okay. Other relief such as what? As I was describing before, potential remedial measures that would be taken, including policies adopted by the attorneys general to limit their use of pretextual investigations to prevent the free exercise of the First Amendment. The – the relief we sought in front of Justice Breger was limited and narrow. We asked – we did ask for the disqualification of the Massachusetts attorney general, but under – again, under Massachusetts law, the denial of a motion for disqualification has no preclusive effect. That's the Jorrez v. Palmer case. I also refer the Court again to the Bernier case, where – which described the catch-22 of putting a claim in front of a judge that doesn't get resolved. We didn't put claims in front of the judge. We made arguments, but even the judge recognized that she was not going to reach our First Amendment claims. In terms of Justice Oestreger, it is true that he dismissed affirmative defenses that we sought to raise in front of him. The reason was not because they were meritless. The reason – and I'm quoting from the transcript of the June 12, 2019, proceeding on page 43. He said, just so we're clear, at the end of the day, you're going to prove a Martin Act violation or you're not. And these affirmative defenses are irrelevant to the merits of that case. That's why it was dismissed. And to the extent the attorney general is coming in now and arguing res judicata, which has never been briefed, and to the extent the Court is willing to entertain an argument that's presented for the first time at oral argument, we would request the opportunity to fully brief this issue and inform the Court about what Justice Oestreger said after he saw all the evidence. So his motion not to let us proceed on those defenses was made before any evidence came in. After all the evidence came in, he referred to the attorney general's investigation of ExxonMobil as an ill-conceived initiative that was rooted in politically motivated statements, memorializing a hyperbolic complaint, and he also referred to their lead witness, the first witness they brought into the Court to testify that they had been defrauded. They said that witness was manifestly biased, and he discounted her testimony. That trial should never have happened. We should never have been subjected to the burdens of appearing in that courtroom and defending our actions because it is rooted in an improper exercise of State power to suppress free speech. And that is why their danger here is not simply one of opening the floodgates. Of course, that's always a risk, and the courts are prepared to fashion appropriate standards to make sure that the floodgates aren't opened. But the greater danger is affirming the district court and slamming the courthouse door on First Amendment claims that are based on the discriminatory use of State power in this context. All we want is an opportunity to have our day in court and prove our case. Roberts. Can you address the mootness issue with respect to the documents? Ms. Sanders, the State said that there's a stipulation in place that is essentially because it's a litigation hold, it's just sitting there. So can you address that? Is there such a stipulation? I can, Judge. I have a copy of it in front of me. And the provision that does not give us full relief is that under the protective order that's in place, the Attorney General is allowed to retain copies of documents, or at least appears to be. According to the stipulation, it says, notwithstanding anything to the contrary, counsel of record for parties may retain one copy of documents constituting work product, copy of pleadings, motion papers, discovery responses, deposition transcripts, and deposition in trial exhibits. We want all of the documents returned without exception, regardless of the application of this provision. In addition, for the AG to argue the case is moot based on something that hasn't yet happened would require further development of the factual record. The AG is arguing that they will return the documents, they will comply with the protective order when the time comes. That has not happened yet. But they're not appealing the New York State case, right? So, I mean, what's holding up the stipulation from being complied with? They said it's a litigation hold that's holding it up. Apparently, that's right. Because it's supposed to be within 60 days, it should happen. You know, their obligation is either to return or destroy the documents under the protective order. ExxonMobil does not have any hand in this. The only part we object to is even under the stipulation, they can retain copies. And again, the objective is to obtain these documents, to obtain the internal records, that is a quote from their documents, obtain the internal records of oil and gas companies so that they can use pressure to cause the companies to change their perspective on climate change. What does retaining the documents put pressure on Exxon? Because we don't know what they're going to do with the documents. It is we're That's the pressure is what they do later, right? If they bring new suits, that's, I guess, would be the pressure. And then I assume you can assert these same defenses or assert new claims. But you're saying that it's the mere fact of the documents being held that's exerting pressure on your poor client, right? That's right. Because it puts us at risk, Judge, that they will do those things. Well, I mean, I suppose you're at risk because they've already seen the documents then, too. Do we need to sort of whitewash their brains somehow? Is that relief you'd be seeking? No, it's not relief they would be seeking. We would be seeking appropriate relief that would prevent them from using the knowledge that they've obtained from this case, either on their own or in consultation with other state AGs or the activists who they've been colluding with from the beginning. My friend mentioned that during the course of the proceedings in front of Justice Oestreger, we obtained some minimal discovery. Now, that discovery further supported our claims, and we attempted to amend our answer to include those documents. The Attorney General ran into court and sealed, had those activists, Matt Powa, and the State Attorneys General, including with respect to the bringing on of this investigation. We know there is more. We have not yet had any discovery, and what we've seen from the limited discovery we had in front of Justice Oestreger tells us that if the matter proceeded to discovery, we would be able to develop the record further and support our claim. And that's all that we're asking for, is an opportunity to return to the district court, allow our claim. All right. Thank you. Thank you, Judge. Wait, wait, wait. I think Judge Bianco wanted to ask another question. I just wanted to ask New York State whether it's your interpretation of that stipulation that you get to retain a copy or not. It's not clear to me what your position is on that. To my understanding, it's a stipulation by the court, so there's some reason to say that the state court doesn't stipulate in their process, so it's exon Q about what should or should not be. What is your position? Is your position that you get to retain a copy of all the documents that they provided or not? To my understanding, it's a stipulation that sets out what part of the claim you need to retain a copy. If it now has a concern or a different use, then you can take that and take it back to supervising and so forth. Okay. Where is the stipulation in the record? The stipulation is attached to the state's motion to dismiss as in the motion to dismiss starting at 150, MA 150, and the language providing for return and description in the stipulation of the documents that are covered that makes clear that it's pretty much everything that hasn't been publicly disclosed or submitted on the public record, and that's at MA 151. Thank you. All right. Thanks very much. We'll reserve decision. Well argued and very interesting.